UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-371 (SRN)

UNITED STATES OF AMERICA,

Plaintiff,

v.

HANS MADSEN,

Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant HANS MADSEN (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter, the "United States" or the "government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The defendant agrees to plead guilty to Count 1 of the Information, which charges the defendant with wire fraud, in violation of 18 U.S.C. § 1343. The defendant is pleading guilty because he is guilty of this charge. The defendant fully understands the nature and elements of the crime with which he has been charged.

2. **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count 1 of the Information. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

SCANNED
MAR 1 4 2024
U.S. DISTRICT COURT ST. PAUL

Beginning in or about January 2020, and continuing until at least October 2023, in the State and District of Minnesota and elsewhere, the defendant knowingly devised and executed an artifice to defraud the United States Postal Service (Postal Service). More specifically, during this time period, the defendant was employed as the Chief Financial Officer of Midwest Constructors, Inc. ("Midwest"), a construction service company located in Andover, Minnesota. The defendant's duties and responsibilities at Midwest included entering contracts and managing work orders for Midwest to provide maintenance and repair services to various facilities located in Minnesota and throughout the United States, as well as handling accounting and finances for Midwest.

On or about January 14, 2020, the defendant entered into a contract agreement, on behalf of Midwest, with EMCOR Facilities Service, Inc. (EMCOR) for Midwest to provide repair services to Postal Service facilities in Minnesota and throughout the Midwest. As part of the agreement, the defendant, on behalf of Midwest, agreed to identify the use of any subcontractors on work orders performed for Postal Service facilities. In such cases, the agreement specified that Midwest would only be entitled to a $50 markup for subcontractor invoices up to $500, and up to a 10% markup for invoices between $500 and $15,000. The agreement further required Midwest to provide detailed documentation regarding the use of subcontractors on work orders, including invoices describing subcontractor labor rates, labor hours, total workers on location, itemized materials, and a full description of the work provided. As further part of the agreement, the defendant, on behalf of

Midwest, agreed to limit Midwest's markups on materials and rented equipment to a 20% administrative fee to cover procurement costs, and trip charges to 1 hour of straight travel time. The agreement required Midwest to submit all invoices electronically through EMCOR's Invoice Management Portal, which were reviewed by EMCOR personnel in Phoenix, Arizona and Norristown, Pennsylvania. The defendant signed the agreement on behalf of Midwest.

Beginning in approximately January 2020, and continuing until approximately October 2023, in the State and District of Minnesota, and elsewhere, the defendant used his position as Chief Financial Officer of Midwest to defraud the Postal Service of more than $550,000 throughout an approximately 3.5 year period. As part of the artifice to defraud, the defendant knowingly and intentionally submitted falsified invoices for work repair jobs for Postal Service facilities in Minnesota and throughout the Midwest.

It was part of the artifice to defraud that the defendant created invoices for Midwest that substantially inflated markups of subcontractor invoices and passed off the work performed by subcontractors as work performed by Midwest. The defendant knew that these representations were false and violated the procedures and requirements set forth in the agreement to fulfill Postal Service work orders.

As an additional part of the artifice to defraud, the defendant routinely inflated markups on materials and rented equipment over the 20% fee limit and exceeded the 1 hour straight travel time trip charges specified in the agreement. For example, the

defendant routinely mischaracterized invoice amounts that included charges exceeding the fee and travel time limits provided in the agreement.

Based on the defendant's fraudulent misrepresentations and material omissions, the Postal Service was defrauded of $672,939.79 in total. The defendant used some of the fraud proceeds for his own personal benefit, including thousands of dollars in payments on his home mortgage and credit card payments, among other expenditures.

On or about March 1, 2023, in the State and District of Minnesota, the defendant,

**HANS MADSEN,**

for the purpose of executing the artifice to defraud described above, knowingly caused to be transmitted by means of a wire communication, certain writings, signs, signals, and sounds, that is, a Midwest invoice in the amount of $4,644.35 that did not disclose the use of a subcontractor who charged Midwest $2,803.00 to carry out HVAC repair work at a Postal Service facility located in Perry, Iowa (Job 42211088), that passed through servers outside the State of Minnesota, all in violation of Title 18, United States Code, Section 1343.

3. **Waiver of Indictment.** The defendant waives the right to be charged by Indictment. The defendant agrees to sign a written waiver of this right at the change of plea hearing.

4. **Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pretrial motions in this case. As part of

this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pretrial motions in this case.

5. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty.

6. **Additional Consequences.** The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

7. **Statutory Penalties.** The defendant understands that Count 1 of the Information is a felony that carries the following statutory penalties:

a. a term of imprisonment of up to twenty (20) years;

b. a criminal fine of up to $250,000 or twice the gain or loss from the offense, whichever is greater;

c. a term of supervised release of up to three (3) years;

d. assessment to the defendant of the costs of prosecution, imprisonment, and supervision, as defined in 28 U.S.C. §§ 1918(b) and 1920;

e. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A); and

f. the possible loss of eligibility for federal benefits pursuant to 21 U.S.C. § 862(a)(1).

8. **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

a. Base Offense Level. The parties agree that the base offense level is 7. U.S.S.G. § 2B1.1(a)(1).

b. Specific Offense Characteristics. The parties agree that a 14-level enhancement applies because the loss exceeded $550,000, but was less than $1,500,000. U.S.S.G. § 2B1.1(b)(1)(H). The parties agree that no other specific offense adjustments apply.

c. Chapter 3 Adjustments. The parties agree that no Chapter 3 adjustments apply.

d. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

Whether the reduction will be imposed shall be determined by the Court in its discretion. In exercising its discretion, the defendant understands that the Court will likely consider the following occurrences: (1) the defendant's truthful testimony during the change of plea and sentencing hearings; (2) the defendant providing full, complete, and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engaging in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

The government also agrees to move for an additional 1-level reduction because the defendant timely notified the government of his intention to plead guilty. U.S.S.G. § 3E1.1(b). With a 3-level downward adjustment for acceptable of responsibility, the total offense level is 18.

e. Criminal History. The parties believe that the defendant's Criminal History Category is I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant understands that if the presentence investigation reveals information that the defendant is a higher criminal history category, the parties may not withdraw from the plea agreement. U.S.S.G. § 4A1.1.

The parties believe that the defendant meets the criteria set forth in the recently added Adjustment for Zero-Point Offenders Section of the Guidelines, and therefore believe the defendant should receive a 2-level reduction pursuant to U.S.S.G. § 4C1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant understands that if the presentence investigation reveals information that the defendant does not meet such criteria, the defendant will not be permitted to withdraw from this Plea Agreement. If U.S.S.G. § 4C1.1 applies, the total offense level is expected to be 16.

f. The parties agree that, other than as specified in this agreement, no other Chapter 2 or 3 enhancements or adjustments apply.

g. Guidelines Range. If the total adjusted offense level is 16 and Criminal History Category I, the resulting advisory Guideline range is 21-27 months' imprisonment.

h. Fine Range. If the adjusted offense level is 16, the advisory fine range is $10,000 to $95,000. U.S.S.G. § 5E1.2(c)(3).

9. **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

10. **Revocation of Supervised Release.** The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the

Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

12. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of conviction, pursuant to Guideline § 5E1.3, which the defendant agrees to pay prior to sentencing.

13. **Restitution Agreement.** The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crimes. The defendant agrees that he owes restitution and agrees that the Court shall order him to pay restitution to any victim of the artifice to defraud regardless of whether the victim was named in the Information. The defendant agrees that he owes restitution in the amount of $672,939.79 to the Postal Service for the loss associated with the conduct described in the Information, which is incorporated herein.

The defendant agrees that restitution shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

14. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Waivers of Appeal and Collateral Attack.** The parties hereby waive the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 27 months of imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective

assistance of counsel. The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act, 5 U.S.C. §§ 552 and 552A.

17. **Complete Agreement.** The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

ANDREW M. LUGER
United States Attorney

Date: 3/14/24

BY: CHELSEA A. WALCKER
Assistant United States Attorney

Date: 3/14/24

HANS MADSEN
Defendant

Date: 3/14/24

MARSH HALBERG, ESQ.
Counsel for Defendant